Louise D. Myers, *et al.*, The Huntington Orthopedic Hospital, *Inc., A Corporation, Intervenor*

*v.*

Town of Milton, A Municipal Corporation, Defendant and Third Party Plaintiff

*v.*

Russell W. Morris, *etc.*, Walter T. Morris, *Deceased, et al.*, Third Party Defendants

(No. 12283)

*Marshall, Harshbarger & St. Clair*, for appellant Town of Milton.

*Raymond I. Lucas*, for appellees Louise D. Myers et al.

CAPLAN, JUDGE:

In this declaratory judgment proceeding, the plaintiffs, Louise D. Myers, Elizabeth R. Bromley, Tillie Frankel, Eva Hyman and Katheryn Weiler, who sue for themselves and on behalf of the members of the Huntington Women's Board of the Morris Memorial Hospital, a voluntary unincorporated association, seek a judicial determination of certain matters concerning a tract of land, with improvements thereon, located in Cabell County, near the Town of Milton. The principal defendant is the Town of Milton, a municipal corporation, which, by virtue of certain deeds, appears to be the holder of the title to the property involved.

The plaintiffs' complaint prays for the adjudication of the following matters: (1) Whether the defendant can lawfully hold property outside of its corporate boundaries and whether it can lawfully convey, lease or otherwise deal with said property; (2) whether the defendant has the right to abandon and discontinue the operation of the hospital located on the property for the purposes for which it was founded and operated; (3) what title the defendant has by reason of certain conveyances (hereinafter discussed) and what its duties are under the provisions contained in those conveyances; and what rights the heirs or assigns of W. T. Morris or other interested parties have in this property.

The defendant filed its answer to the complaint, denying all the allegations of the complaint except those substantiated by deeds. It further denied that the plaintiffs' complaint stated a claim upon which relief could be granted. In a third party complaint, the defendant set out the convey-

ances by which it claims title to the subject property and requested an adjudication, as follows: (1) What right the heirs of W. T. Morris have in the premises; and (2) what title it has and what duties devolved upon it by reason of the conveyances and the provisions set out therein. Upon motion of the defendant the heirs of W. T. Morris were made parties to this action.

Thereafter, The Huntington Orthopedic Hospital, Inc., a corporation, filed its petition to intervene in this proceeding, wherein it related its allegations as to its position and as to the obligations of the defendant, the Town of Milton. In its prayer the intervenor joined the plaintiffs in requesting an adjudication of the matters raised in the original complaint and further prayed for an adjudication of its rights under its deeds and of the obligation of the Town of Milton under the deeds to it.

No evidence was taken in this proceeding, the case having been decided upon the pleadings, including the exhibits filed therewith, and the briefs and arguments of counsel. After rendering a written opinion the court, on March 14, 1963, entered an order wherein it was held that (1) the deeds of December 4, 1930 and July 9, 1932, both of which were executed by W. T. Morris, established a benevolent trust and placed legal title and administration of that trust in The Huntington Orthopedic Hospital, Inc., where it remains; (2) the deeds after the deed of July 9, 1932 were void and of no avail, since title was never conveyed by The Huntington Orthopedic Hospital, Inc., and because the deeds subsequent to that of July 9, 1932, were hostile to the purposes of the trust in that they were forbidden by the terms of the trust and would have effected a reverter hostile to the beneficiaries; (3) the purpose for which the trust exists is for the use and benefit of crippled children; (4) under the doctrine of cy pres, in the event of a failure of a trustee to administer said trust, or if the objects of the trust can not be carried out, a proper court has full power to appoint a trustee and order that the intent and purposes of the trust be carried out as near as may be to those in the original trust; (5) if the trust fails because no trustee can be found

or because the purposes thereof can not be carried out, then the property would revert to the heirs of W. T. Morris; (6) the Town of Milton is not vested with any right, title or interest, either in fee simple, as trustee, beneficiary or otherwise, and therefore can not lawfully convey, lease or otherwise deal with said property as the owner of any interest therein.

On this appeal the defendant contends that the court erred in (1) ruling that the deeds of December 4, 1930 and July 9, 1932, established a benevolent trust, with The Huntington Orthopedic Hospital, Inc. as present trustee; (2) failing to rule that the deed of August 12, 1935, was in fact the deed of The Huntington Orthopedic Hospital, Inc.; (3) ruling that The Huntington Orthopedic Hospital, Inc. could not convey the property because such transfer would violate the terms of a trust established by W. T. Morris by deed of December 4, 1930; and (4) finding that the Town of Milton is not vested with any right, title or interest, either in fee simple, as trustee, beneficiary, or otherwise to the real property in question. An appeal and supersedeas was allowed by this Court on September 30, 1963.

This controversy arose out of certain conveyances of a tract of land situate in Grant District, Cabell County and consisting of approximately one hundred eighty-two acres. By deed dated December 4, 1930, W. T. Morris conveyed the aforementioned property to The Huntington Orthopedic Hospital, a corporation. In addition to the description of the property and certain exceptions and reservations, with which we are not concerned here, the deed contained the following language: "* * * the party of the first part does hereby grant and convey unto the party of the second part, for the uses and purposes hereinafter specified, all that certain tract, piece or parcel of land * * *.

"To have and to hold unto the party of the second part, its successors and assigns for the use and benefit as it or they may deem proper for the treatment, custody, maintenance, convalescence, and otherwise taking care of sick or crippled children and for general hospital purposes for

such children and to be known as the Morris Memorial for Crippled Children.

"In the event that the party of the second part, its successors or assigns, shall fail to use the property hereby conveyed for the uses and purposes aforesaid and such failure shall continue for three years then said property shall revert to and revest in the party of the first part, if he be then living, and if not, then to his heirs or assigns. * * *

"The party of the second part covenants and agrees that it will not, during the life of the party of the first part and for a period of twenty-one (21) years after the death of said party of the first part sell or convey, or mortgage or otherwise encumber the property hereinabove described and conveyed and in the event the said party of the second part shall within said period convey or attempt to convey, or mortgage or otherwise encumber said property, or any part thereof, then the title to said property shall revert to and become vested in the party of the first part, his heirs or assigns * * *."

A second conveyance of the subject property was effected by a deed dated July 9, 1932, whereby The Huntington Orthopedic Hospital, a corporation, party of the first part, conveyed said property to Huntington Orthopedic Hospital, Inc., a corporation, party of the second part. W. T. Morris joined in this deed as party of the third part. After stating the consideration, the deed, where pertinent, reads as follows: "* * * the party of the first part does hereby grant and convey unto the party of the second part, all that certain tract, piece or parcel of land * * *, and being the same property conveyed to the party of the first part by W. T. Morris, by deed dated the 4th day of December, 1930, and of record * * *.

"This conveyance is made subject to all of the exceptions, reservations, trusts, conditions and uses contained in said deed from W. T. Morris, to the said party of the first part, dated the 4th day of December, 1930, to which said deed reference is hereby made for a more particular description of such exceptions, reservations, conditions, uses and trusts therein contained.

"The party of the third part joins herein for the purpose of giving his consent and approval to this conveyance, it being expressly covenanted and agreed that the party of the second part shall take and hold said property for the uses and benefits and subject to all the terms, covenants and conditions contained in the deed aforesaid from the said W. T. Morris, to The Huntington Orthopedic Hospital dated the *14th* day of December, 1930."

By deed dated August 12, 1935, The Huntington Orthopedic Hospital, a corporation, conveyed this property to The Morris Memorial Hospital, Inc. After reciting the consideration and designating the property thereby granted and conveyed, the deed contains the following paragraph:

"This conveyance is subject to all covenants, restrictions, reservations and exceptions as set forth in said deed from W. T. Morris, unmarried, to the Huntington Orthopedic Hospital dated December 4, 1930, * * *."

An error in this deed, obvious from an examination of the record, requires special consideration at this point. It is noted that the grantor in the deed of August 12, 1935, is Huntington Orthopedic Hospital, a corporation. That corporation conveyed the subject property by deed dated July 9, 1932, and clearly could not be the grantor in the deed with which we are now concerned. Even if the record were silent as to the erroneous grantor, such error is so glaring, considering the similarity of the names of the two corporations, that a correction should have been required. However, the record is not silent, but unmistakably shows that The Huntington Orthopedic Hospital, Inc., rather than The Huntington Orthopedic Hospital, a corporation, was, in fact, the grantor. This is unequivocally supported by language in the petition to intervene and in the supplemental memorandum of the plaintiffs and Huntington Orthopedic Hospital, Inc., both of which are parts of the record.

The petition of Huntington Orthopedic Hospital, Inc., to intervene contains the following language: "* * * The transfer of title to said property was an incident to the dissolution of the former corporation [Huntington Ortho-

pedic Hospital, a corporation] of substantially and almost identically the same name.

"3. That this intervenor executed the deed to The Morris Memorial Hospital, Inc., dated August 12, 1935, a certified copy of which deed is filed with plaintiffs' Complaint * * *."

Noting that the designation of the grantor in the deed of August 12, 1935 was an error, the following statement is contained in the aforesaid supplemental memorandum: "* * * but from all the circumstances and the action of the parties by reason of the deeds we must conclude that the description of the grantor corporation was just an error and can be corrected under amended or additional pleadings and orders."

We are in agreement with the defendant that this was an error clear in the record, which could and should have been corrected. Therefore, in this proceeding, we will consider Huntington Orthopedic Hospital, Inc. as having been the grantor in the deed of August 12, 1935.

A further deed involved in this action was dated August 27, 1935, whereby Morris Memorial Hospital, Inc. purported to convey the subject property to the Town of Milton, "for the uses and purposes hereinafter specified." The following provision was contained in the deed: "THIS conveyance is subject to all the covenants, restrictions, reservations and exceptions as set forth in said deed dated December 4, 1930, from W. T. Morris, unmarried, to The Huntington Orthopedic Hospital, a corporation * * *."

The fifth and last deed involved in this proceeding is a quitclaim deed dated April 30, 1937, and executed by "the heirs-at-law of W. T. Morris, as far as known," in favor of the Town of Milton. Recitals were contained in this deed setting out the various conveyances of this property, culminating with the conveyance to the defendant. It was indicated therein by further recital that Morris Memorial Hospital, Inc. had conveyed the property to the Town of Milton for the purpose of receiving financial help and assistance from the federal government and that the purpose of this quitclaim deed was the compliance with the require-

ments of the government in eliminating any reversionary rights the heirs of W. T. Morris might have had. The consideration for this deed was Five Dollars and "for the further consideration of the purposes and intentions of the founder and the work being done by The Morris Memorial Hospital, * * *."

The following granting clause is found in this deed: "Do hereby grant, convey, relinquish, assign and forever quit-claim unto said Town of Milton, party of the second part, all of their right, title and interest in and to the said boundary of 181.89 acres, more or less, of land, described in the deeds hereinbefore mentioned, and the descriptions therein set out and given are hereby adopted and herein included by reference to said deeds and the record thereof, to the same extent and as fully as if the same were copied herein, and they do hereby surrender and forever quit-claim all of their right, title and interest in said property and premises both in law and equity, unto the said Town of Milton, party of the second part."

During the years between 1935 and 1940, with the financial assistance of the federal government and, to a lesser extent, the state government, a one-hundred twenty bed hospital facility was erected upon this property. By conservative estimate it has a value in excess of one million dollars. From 1935 until 1960 this hospital was operated continuously for the care of crippled children by Morris Memorial Hospital, Inc., a corporation, under various leases from the Town of Milton. In 1960, because of the welcome inroads which the Salk vaccine had made upon the disease poliomyelitis, only five patients were receiving treatment and the hospital was forced to close. Thereafter the Circuit Court of Cabell County approved the cancellation of the ninety-nine year lease between Morris Memorial Hospital, Inc. and the Town of Milton and approved the transfer of the personal property from said hospital to the Town.

Since the termination of the lease with Morris Memorial Hospital, Inc. the defendant, the Town of Milton, has had the responsibility for the upkeep and maintenance of this

valuable property. To defray the expense thereof the defendant Town has sought to lease this property. The plaintiffs instituted this action to prevent the defendant from leasing, selling or otherwise dealing with such property for any purpose other than the care and maintenance of crippled children.

The ultimate issue in this proceeding is the determination of the ownership of the property involved. Also to be decided is the nature of the estate held, that is, whether the holder of title has legal title, equitable title, or both legal and equitable title constituting a fee. Careful examination and consideration of the provisions of the deeds heretofore noted are necessary in arriving at a proper solution of these issues and of the many subsidiary issues raised.

In relation to the deed of December 4, 1930, whereby W. T. Morris conveyed the property to Huntington Orthopedic Hospital, a corporation, the parties differ as to the nature of the estate created. The intervenor contends that the language, "for the use and purposes hereinafter specified," and the subsequent wording in the deed established a benevolent trust. The defendant Town, on the other hand, asserts that this conveyance created a fee simple determinable. In view of the reverter clause which existed in this deed and which, by reference, was carried over into the deed of July 9, 1932, we find it unnecessary to determine whether this conveyance constituted a trust or a fee simple determinable. In either case the reverter clause, by reason of a subsequent conveyance hereinafter discussed, became operative and effected a reversion to the heirs of W. T. Morris, the original grantor.

The reverter clause, quoted above, provides that the property shall revert to the grantor, his heirs or assigns if, during the life of said grantor and for a period of twenty-one years after his death, the property is conveyed, attempted to be conveyed, mortgaged or otherwise encumbered. By joining in the deed of July 9, 1932, and by incorporating the provisions of the former deed, the original grantor prevented the reverter clause from taking effect as to that conveyance and continued its existence.

W. T. Morris died in 1934 and, on August 12, 1935, Huntington Orthopedic Hospital, Inc. (erroneously designated Huntington Orthopedic Hospital, a corporation), conveyed the subject property to Morris Memorial Hospital, Inc. This conveyance, having been made within twenty-one years after the death of the original grantor, was in clear violation of the aforesaid reverter clause. By reason thereof the property reverted to the heirs of W. T. Morris. The reversion was provided for in the deed in clear and unambiguous language and requires no construction or interpretation.

That this reversion would occur even if this were a charitable trust is evident from the following language in Vol. IV Scott on Trusts, Charitable Trusts, Section 401.2: "Where property is conveyed or devised upon a charitable trust and it is provided that if the property is not used in the manner directed it shall revert to the settlor or his heirs, the trust is subject to a condition subsequent. In such a case if the condition is broken, the settlor or his heirs are entitled to the property."

In the instant case the property was conveyed contrary to the limitation imposed by the grantor and, as specified in the deed, the land reverted to the heirs. In the case of a limitation the estate determines as soon as the contingency happens, without any act on the part of him who is to thereafter take. A new estate is thereby created. 31 C.J.S., Estates, Section 20. Here a new estate was created in the heirs when, in contravention to the limitation in the deeds, the Huntington Orthopedic Hospital, Inc. attempted to convey this property to Morris Memorial Hospital, Inc.

In view of our holding that the subject property reverted to the heirs of W. T. Morris by virtue of the attempted conveyance of August 12, 1935, the deed of August 27, 1935 bears little significance in the instant proceeding. In that deed Morris Memorial Hospital, Inc. purported to convey the land and the improvements thereon to the Town of Milton. Since Morris Memorial Hospital, Inc. acquired no title, because of the reversion to the heirs, it could convey none. Thereafter, until the conveyance by the Morris heirs, the

Town of Milton held this property under apparent or color of title.

During the period that these premises were being operated as a hospital for crippled children many improvements were made. The cost thereof was provided by solicitation of funds and by loans from the Works Progress Administration, an agency of the federal government. When further funds were sought from that federal agency, it expressed doubt as to the eligibility of the institution to receive such funds because of certain reversion and remainder provisions contained in deeds in the chain of title. In order to eliminate the possibility of reverter to the heirs of W. T. Morris and for the purpose of removing any cloud on the title held by the Town of Milton, a quitclaim deed was executed by said heirs to the defendant Town.

This deed dated April 30, 1937, contained several recitals, the first three of which set out the chain of title from W. T. Morris to that purported to be in Morris Memorial Hospital, Inc. The two final recitals read as follows: "WHEREAS, to qualify the institution sought to be established by the said W. T. Morris, by the Deed Referred to, for financial help and assistance to erect buildings from the Federal Government through the Works Progress Administration, The Morris Memorial Hospital, Inc., conveyed the said premises to the Town of Milton, a municipal corporation, as shown by a deed dated the 27th day of August, 1935, and recorded in said Cabell County Court Clerk's Office in Deed Book No. 288, at Page 209, and,

"WHEREAS, said institution has received much financial assistance from said source in the erection of buildings and roads and other physical improvements, and it appearing that some doubt has arisen in the minds of the authorities representing the Federal Government, as to the eligibility of said institution for further financial assistance in erecting other buildings because of certain reversion and remainder provisions contained in the deeds herein referred to, and desiring that said institution shall continue to enlarge and expand to the greatest extent possible to carry out the objects and intentions of its founder, W. T. Morris, now, therefore, This Deed."

Following these recitals were a statement of consideration and the granting clause, both of which have been hereinbefore quoted. It is a contention of the intervenor that the recitals in the quitclaim deed impose conditions subsequent and that the defendant took title subject to the performance thereof. With this contention we can not agree. The recitals as contained in such deed do not constitute conditions but are rather mere declarations of motive for making such conveyance. No language is contained therein which would require a forfeiture or in any way prevent the clear granting clause from becoming fully effective. Even if these recitals were construed as conditions, unless the language used clearly shows that the title should revest upon failure to comply with the conditions, the deed will not be held to be a deed upon condition subsequent. Some provision therein must specify that the title shall revert to the grantor. *Killgore v. County Court of Cabell County*, 80 W. Va. 283, 92 S. E. 562. In that case the Court said: "Language used in a deed declaratory of the purpose of the grantee will not ordinarily have the effect of creating a condition subsequent, and of forfeiting the interest which may be granted to him in the land by a failure to appropriate it to the purpose so declared." See also *Thacker v. Ashland Oil & Refining Company*, 129 W. Va. 520, 41 S. E. 2d 111; *White v. White*, 108 W. Va. 128, 150 S. E. 531; *Engle, et al. v. South Penn Oil Company*, 106 W. Va. 339, 146 S. E. 385.

In the instant case the recitals, in addition to setting out the chain of title, indicate the purpose for which the property was conveyed to the Town of Milton. Though the grantors may have desired a continuation of the operation of this institution, through inadvertence or otherwise they failed to limit the conveyance to that purpose. A recital containing a statement of motive can not serve as a condition on which a conveyance is made unless it is so certain as to admit of no other conclusion. Courts can not indulge in supposition or draw inferences from language used. 6 Thompson on Real Property, 1962 ed., Section 3110.

An examination of the granting clause in the deed of April 30, 1937, shows a clear and unequivocal conveyance

to the Town of Milton. The grantors did "grant, convey, relinquish, assign and forever quit-claim unto said Town of Milton * * * all of their right, title and interest [in the subject property] * * * [and did] surrender and forever quit-claim all of their right, title and interest in said property and premises both in law and equity, unto the said Town of Milton, the party of the second part." Although the drafter of that instrument could have done so, no language was included in such granting clause which, in any manner, limited that conveyance to anything less than a fee.

It is contended that the recitals indicated an intention to limit the conveyance. While recitals may be useful in determining the intention of the parties where the granting clause is ambiguous, such is not the case where no ambiguity exists. This proposition is succinctly stated in 6 Thompson on Real Property, 1962 ed., Section 3110, as follows: "While a recital in the preamble or elsewhere in a deed or contract may be consulted as an aid in interpretation of an ambiguity in the instrument, it can not control the dispositive or operative portion when this is clear or definite or create a doubt which does not otherwise exist. The granting clause which conveyed the interest will prevail over interlocutory recitals." See *Mississippi Cent. R. Co., et al.* v. *Ratcliff, et al.,* 214 Miss. 674, 59 So. 2d 311; *Yuscavage* v. *Hamlin, et al.,* 391 Pa. 13, 137 A. 2d 242; *Pennsylvania Horticultural Society* v. *Craig,* 240 Pa. 137, 87 A. 678; *Kennedy, et al.* v. *Kennedy,* 236 N. C. 419, 72 S. E. 2d 869; 16 Am. Jur., Deeds, Section 241.

It was said in 26 C.J.S., Deeds, Section 90: "Where a recital and an operative part of the deed conflict, the operative part prevails if certain and definite. Thus, a recital cannot control over plain words of the granting part of the deed, and a grant in a deed cannot be diminished or qualified by a recital therein." Thus, in the instant case, even if there were a conflict between the recitals and the granting clause, the latter clearly will prevail.

The clear effect of this quitclaim deed was to place unlimited ownership of the subject property in the Town of Milton. This was the sole purpose of the deed, that being

802

the only means by which funds could be acquired for the further development of this institution. The deed from the heirs of W. T. Morris was not to be a sham, but was intended to vest a valid title, without possibility of reverter, in the Town. This was done and the Town, having both legal and equitable title without conditions imposed thereon, is the owner of the fee.

For the reasons stated the judgment of the Circuit Court of Cabell County is reversed and the case is remanded to that court for further proceedings not inconsistent with the principles herein enunciated.

*Reversed and remanded.*